LEXSEE 2006 U.S. DIST. LEXIS 24895

ANDREA WILLIS, Plaintiff, v. MIKE NEAL, et al., Defendants.

Case No. 1:04-cv-305

UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TENNESSEE

*2006 U.S. Dist. LEXIS 24895*

*April 24, 2006, Decided*

**PRIOR HISTORY:** *Willis v. Neal, 2006 U.S. Dist. LEXIS 8446 (E.D. Tenn., Feb. 1, 2006)*

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff brought a *42 U.S.C.S. § 1983* action against defendants, a sheriff and others, alleging violations of plaintiff's Fourth Amendment rights and various state law claims, including false arrest. The court granted summary judgment in favor of defendants on all claims except for a state law false arrest claim against the sheriff. The sheriff filed a motion for reconsideration under Fed. R. Civ. P. 54(b).

**OVERVIEW:** In its prior order, the court held that the sheriff was entitled to qualified immunity with regard to plaintiff's § 1983 claim. However, the court did not address qualified immunity in the context of plaintiff's state law claims. In his motion for reconsideration, the sheriff argued that he was entitled to rely on the defense of qualified immunity. The court held that its failure to consider the defense of qualified immunity with regard to the false arrest claim was in error. The court noted that the Court of Appeals of Tennessee had made clear that the same defense of qualified immunity that was available to police officers in § 1983 actions also was available in causes of action under Tennessee state law. Because the court had already held that the sheriff was entitled to qualified immunity as to the § 1983 claim, he also was entitled to qualified immunity with regard to the state law false arrest claim.

**OUTCOME:** The court granted the sheriff's motion for reconsideration. The court vacated its prior order and granted in full defendants' summary judgment motions. The court dismissed with prejudice plaintiff's federal and state law claims.

**LexisNexis(R) Headnotes**

*Civil Procedure > Judgments > Entry of Judgments > Multiple Claims & Parties*
[HN1] Pursuant to Fed. R. Civ. P. 54(b), an order that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties. In other words, until a district court enters a judgment, it may alter or amend any of its orders.

*Civil Procedure > Summary Judgment > Evidence*
*Civil Procedure > Summary Judgment > Standards > General Overview*

[HN2] Summary judgment is proper where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In ruling on a motion for summary judgment, a court must view the facts contained in the record and all inferences that can be drawn from those facts in the light most favorable to the nonmoving party. The court cannot weigh the evidence, judge the credibility of witnesses, or determine the truth of any matter in dispute.

*Civil Procedure > Summary Judgment > Burdens of Production & Proof > General Overview*
*Civil Procedure > Summary Judgment > Standards > Appropriateness*
[HN3] A party moving for summary judgment bears the initial burden of demonstrating that no genuine issue of material facts exists. To refute such a showing, the nonmoving party must present some significant, probative evidence indicating the necessity of a trial for resolving a material factual dispute. A mere scintilla of evidence is not enough. A court's role is limited to determining whether the case contains sufficient evidence from which a jury could reasonably find for the nonmoving party. If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to summary judgment. If the court concludes that a fair-minded jury could not return a verdict in favor of the nonmoving party based on the evidence presented, it may enter a summary judgment.

*Civil Rights Law > Immunity From Liability > Local Officials > Individual Capacity*
[HN4] The Court of Appeals of Tennessee has made clear that the same defense of qualified immunity that is available to police officers in causes of action under *42 U.S.C.S. § 1983* is also available in causes of action under Tennessee state law. The analysis of qualified immunity under § 1983 and Tennessee state law is coextensive.

**COUNSEL:** [*1] For Andrea Willis, Plaintiff: John C Cavett, Jr, Cavett & Abbott, Chattanooga, TN.

For Mike Neal, individually and as Sheriff of Rhea County, Tennessee, John Argo, individually and as a member of the Rhea County Sheriffs Department, Defendant: Jeffrey M Atherton, Chattanooga, TN.

For Ronnie Hitchcock, individually and as Sheriff of Sequatchie County, Tennessee, Sequatchie County, Tennessee, Defendant: Thomas E LeQuire, Spicer, Flynn & Rudstrom, PLLC, Chattanooga, TN.

For Clint Huth, individually and as Police Chief of Dunlap, Tennessee, City of Dunlap, TN, Defendant: Stacy L Archer, Robinson, Smith & Wells, Chattanooga, TN.

For James Ollie McMillon, individually and as member of and agent for Rhea County TN, member of Dunlap City Police Force & Sequatcie Co., TN Sheriff's Dept. also known as James Ollie McMillian also known as James Ollie McMillion, Jr., Defendant: Don W Poole, Poole, Thornbury & Morgan, Chattanooga, TN.

For Rhea County, TN, Defendant: Jeffrey M Atherton, Chattanooga, TN.

For Chattanooga Choo-Choo Company, as Plan Administrator of the Chattanooga Choo Choo Short Term and Long Term Disability Plans, Defendant: John M Scannapieco.

**JUDGES:** HARRY [*2] S. MATTICE, JR., UNITED STATES DISTRICT JUDGE.

**OPINION BY:** HARRY S. MATTICE, JR.

**OPINION:**

**MEMORANDUM OPINION**

Before the Court is Defendant Ronnie Hitchcock's Motion for Reconsideration, in which Defendant asks the Court to reconsider its denial of summary judgment to Defendant with regard to Plaintiff's state law claim of false arrest.

For the reasons stated below, the Court **GRANTS** Defendant's Motion for Reconsideration.

## I. STANDARDS OF REVIEW

### A. Reconsideration

[HN1] Pursuant to *Federal Rule of Civil Procedure 54(b)*, an order that "adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties ... is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties." In other words, "until a district court enters a judgment, it may alter or amend any of its orders." *Jaynes v. Austin, 20 Fed. Appx. 421, 425, 2001 WL 1176424, at *3 (6th Cir. 2001).*

### B. Summary Judgment

[HN2] Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together [*3] with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Fed. R. Civ. P. 56(c)*. In ruling on a motion for summary judgment, the Court must view the facts contained in the record and all inferences that can be drawn from those facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986); National Satellite Sports, Inc. v. Eliadis Inc., 253 F.3d 900, 907 (6th Cir. 2001)*. The Court cannot weigh the evidence, judge the credibility of witnesses, or determine the truth of any matter in dispute. *Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)*.

[HN3] The moving party bears the initial burden of demonstrating that no genuine issue of material facts exists. *Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)*. To refute such a showing, the nonmoving party must present some significant, probative evidence indicating the necessity of a trial for resolving a material factual dispute. *Id. at 322.* [*4] A mere scintilla of evidence is not enough. *Anderson, 477 U.S. at 252; McLean v. Ontario, Ltd., 224 F.3d 797, 800 (6th Cir. 2000)*. The Court's role is limited to determining whether the case contains sufficient evidence from which a jury could reasonably find for the nonmoving party. *Anderson, 477 U.S. at 248-49; National Satellite Sports, 253 F.3d at 907*. If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to summary judgment. *Celotex, 477 U.S. at 323*. If the Court concludes that a fair-minded jury could not return a verdict in favor of the nonmoving party based on the evidence presented, it may enter a summary judgment. *Anderson, 477 U.S. at 251-52; Lansing Dairy, Inc. v. Espy, 39 F.3d 1339, 1347 (6th Cir. 1994)*.

## II. PROCEDURAL AND FACTUAL BACKGROUND

Plaintiff Andrea Willis brought this action against Defendant Ronnie Hitchcock and others, alleging claims for violation of her *Fourth Amendment* rights under the United States Constitution [*5] pursuant to *42*

U.S.C. § 1983 and for various state law causes of action, including false arrest. All of the Defendants filed motions for summary judgment. By way of an Order and Memorandum entered on February 1, 2006 [Court Doc. Nos. 55, 56], the Court granted the summary judgment motions filed by the other Defendants and granted in part and denied in part the summary judgment motion filed by Defendant Ronnie Hitchcock. The Court's Order left one claim pending: Plaintiff's state law false arrest claim against Hitchcock in his individual capacity. On March 28, 2006, Defendant Hitchcock filed a motion for reconsideration [Court Doc. No. 60], asking the Court to reconsider its denial of summary judgment as to that one claim.

The facts of this case are set forth in the Court's previous Memorandum [Court Doc. No. 55], and the Court will not repeat them here.

### III. ANALYSIS

In his answer to the complaint, his motion for summary judgment, and his motion for reconsideration, Defendant Hitchcock asserted that he is entitled to rely on the defense of qualified immunity. (Court Doc. No. 13, Ans. PP XI, XII; Court Doc. No. 33, Br. in Supp. of Mot. for [*6] Summ. J. 4-5; Court Doc. No. 60, Mot. for Recons. 5.) The Court ruled in its previous Order and Memorandum that Hitchcock was entitled to qualified immunity with regard to Plaintiff's claim under *42 U.S.C. § 1983*, but the Court did not address qualified immunity in the context of Plaintiff's state law claims. The Court now believes that its failure to consider the defense of qualified immunity with regard to Plaintiff's state law false arrest claim was in error.

In *Youngblood v. Clepper,* [HN4] the Court of Appeals of Tennessee made clear that the same defense of qualified immunity that is available to police officers in causes of action under § 1983 is also available in causes of action under Tennessee state law. *856 S.W.2d 405, 407-08 (Tenn. Ct. App. 1993)*. The analysis of qualified immunity under § 1983 and Tennessee state law is coextensive. *See id.*

As noted above, the Court has already held in its previous Order and Memorandum that Defendant Hitchcock is entitled to qualified immunity with regard to Plaintiff's § 1983 claim. Because the analysis of qualified immunity is identical under both § 1983 and Tennessee state law, Defendant Hitchcock [*7] is also entitled to qualified immunity with regard to Plaintiff's state law false arrest claim. This result is dictated by the same analysis and for the same reasons stated in the Court's prior Memorandum in Part III.A.2 [Court Doc. Nos. 55]. The Court will not repeat the analysis here.

### IV. CONCLUSION

As explained above, and in accordance with the Memorandum entered on February 1, 2006 [Court Doc. No. 55], it is **ORDERED**:

(1) Defendant Hitchcock's Motion for Reconsideration [Court Doc. No. 60] is **GRANTED**;

(2) The Court's Order entered on February 1, 2006 [Court Doc. No. 56] is **VACATED**;

(3) The following motions by the Defendants are **GRANTED IN FULL**: the motion for summary judgment by the City of Dunlap and Clint Huth [Court Doc. No. 24]; the motion for summary judgment by Mike Neal, John Argo, and Rhea County [Court Doc. No. 27]; the motion for summary judgment by James McMillon [Court Doc. No. 41]; and the motion for summary judgment by Sequatchie County and Ronnie Hitchcock [Court Doc. No. 32];

(4) Plaintiffs claims under *42 U.S.C. § 1983* for violation of her

*Fourth Amendment* rights and under Tennessee **[*8]** state law for the torts of false arrest, malicious harassment, assault and battery, slander and libel, intentional and negligent infliction of emotional distress, malicious prosecution, abuse of process, and outrageous conduct against Defendants City of Dunlap, Tennessee; Clint Huth; Mike Neal; John Argo; Rhea County, Tennessee; James McMillon; Sequatchie County, Tennessee; and Ronnie Hitchcock, in all capacities, are **DISMISSED WITH PREJUDICE**;

(5) In accordance with *Federal Rule of Civil Procedure 54(d)(1)*, Defendants are entitled to recover their costs of this action.

The Clerk is directed to close the file in this case.

SO ORDERED this 24th day of April, 2006.

HARRY S. MATTICE, JR.
UNITED STATES DISTRICT JUDGE


Positive
As of: May 23, 2007

JOE LANE; STATE OF TENNESSEE on relation of Joe Lane, Plaintiffs, v. DREW MARTIN; TIMOTHY HUTCHISON; KNOX COUNTY, TENNESSEE; and HARTFORD INSURANCE COMPANY, Defendants. and JOE LANE; STATE OF TENNESSEE on relation of Joe Lane, Plaintiffs, v. DREW MARTIN; TIMOTHY HUTCHISON; KNOX COUNTY, TENNESSEE; and HARTFORD INSURANCE COMPANY. Defendants.

No.3:04-CV-560, No. 3:04-CV-590

UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TENNESSEE, KNOXVILLE DIVISION

2005 U.S. Dist. LEXIS 31969

July 8, 2005, Decided
July 8, 2005, Filed

CASE SUMMARY:

**PROCEDURAL POSTURE:** Plaintiff detainee brought an action, pursuant to *42 U.S.C.S. § 1983*, against defendants, the sheriff, the deputy, the county, and the insurer, for alleged violation of the detainee's constitutional rights. He also asserted in the complaint several state law claims. The sheriff filed a motion for summary judgment in his individual capacity.

**OVERVIEW:** The detainee alleged that the deputy verbally abused and physically assaulted the detainee at a traffic stop before the detainee was transported to the county's detention facility. According to the detainee, he was denied medical care and access to his heart medication while at the detention facility. The detainee claimed that he was detained for an unreasonable length of time until he was released on bond. He also claimed that the sheriff failed to properly supervise his deputies. The court found that the three hours that the detainee was held before he was allowed to make a phone call and the seven hours that he was held before he was released were both not an unreasonable period of time under the Fourth Amendment. Further, *Tenn. Code Ann. § 8-8-301* did not create liability under a private cause of action because of the official bond that the sheriff obtained under *Tenn. Code Ann. § 8-8-103*. Furthermore, the sheriff could not be held liable under *42 U.S.C.S. § 1983* based on the doctrine of respondeat superior. Finally, the detainee failed to demonstrate that the sheriff in his individual capacity committed a constitutional violation or violated a clearly established right.

**OUTCOME:** The sheriff's motion for summary judgment was granted, and the sheriff, in his individual capacity, was dismissed from the case.

**COUNSEL:** [*1] For Joe Lane State of Tennessee on relation of Joe Lane, Plaintiff: Herbert S Moncier, Law Office of Herbert S. Moncier, Knoxville, TN.

For Drew Martin, Defendant: Robert H Watson, Jr, Watson, Roach, Batson, Rowell & Lauderback, P.L.C., Knoxville, TN.

For Knox County, TN, Defendant: John E Owings, Office of Knox County Law Director, Knoxville, TN.

**JUDGES:** JORDAN/SHIRLEY, PHILLIPS/SHIRLEY.

**OPINION BY:** Leon Jordan

**OPINION:**

**MEMORANDUM OPINION**

This civil action is before the court for consideration of "Motion for Summary Judgment of Defendant Timothy Hutchison in His Individual Capacity" [doc. 11]. Plaintiff has not filed a response to the motion. Oral argument is not necessary, and the motion is ripe for the court's consideration. For the reasons stated herein, the motion for summary judgment will be granted, and defendant Timothy Hutchison in his individual capacity ("Sheriff Hutchison'' or " the Sheriff") will be dismissed from this case.

Plaintiff has brought this action pursuant to 42 U.S.C. § 1983 for alleged violation of his constitutional rights. He also asserts in the complaint several state law claims.

I.

*Factual Background*

The incident [*2] that is the basis for this lawsuit occurred on November 29, 2003. n1 According to the plaintiff, he mistakenly was traveling in the wrong direction on an exit ramp. Upon realizing his mistake, plaintiff turned around and was exiting on the exit ramp when he was stopped by defendant Drew Martin ("Deputy Martin"), a deputy with the Knox County Sheriff's Department. Plaintiff alleges that Deputy Martin was verbally abusive to him and when plaintiff asked for his name and badge number, Deputy Martin became enraged and threw plaintiff into his vehicle and to the ground. Plaintiff alleges that he was beaten and as a result suffered rib and shoulder injuries. Plaintiff was transported to the Knox County Detention Facility and was eventually released on bond. According to plaintiff, he was denied medical care and access to his heart medication while at the Detention Facility.

n1 The facts that follow are taken from the complaint. The only evidence before the court is Sheriff Hutchison's unopposed affidavit.

The material [*3] allegations pertaining to Sheriff Hutchison are set out in the following paragraphs:

6. Defendant TIMOTHY HUTCHISON is the Sheriff of Knox County, Tennessee and is sued both in his official capacity and is also sued in his individual capacity for failure and neglect to perform duties imposed upon him as Sheriff of Knox County, Tennessee and as principal on his official bond.

25. Plaintiff was held in the Knox County Detention Facility for in excess of three (3) hours prior to being allowed a telephone call pursuant to the customs and policies of Defendant

KNOX COUNTY and HUTCHISON.

26. Plaintiff was held in the Knox County Detention Facility for an unreasonable period of approximately seven (7) hours pursuant to the customs and policies of Defendant KNOX COUNTY and HUTCHISON.

93. Defendant Hutchison is required to perform duties as Sheriff for Knox County by Tennessee law and Knox County law.

94. Defendant HUTCHISON failed and neglected to perform the duties required of him to train, supervise and discipline his officers in his conduct *while exercising his authority while working for private persons*; n2 by failing to train and supervise his officers [*4] on the lawful use of force in making arrest for misdemeanors; by failing to train and supervise his officers on the use of post misdemeanor citations; and by being deliberately indifferent to the use of excessive force by his officers.

96. Plaintiff sues Defendant HUTCHISON for the breach of his duty as sheriff of Knox County, Tennessee.

102. Plaintiff brings this action on relation of the STATE OF TENNESSEE and sues Defendant HUTCHISON and MARTIN individually under his official bonds as beneficiaries of said bonds as provided for in T.C.A. § 8-8-301 n3 for failures and neglect of his duties required of him as sheriff as specified in this complaint.

N2 It is unclear to the court how the italicized allegation has any relevance in this case.

n3 This section of Tennessee Code Annotated does not exist. The court concludes that plaintiff must be referring to *Tennessee Code Annotated section 8-8-103* or *section 8-8-301*.

II.

*Summary Judgment Standard*

Pursuant to [*5] *Federal Rule of Civil Procedure 56(c)*, summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Canderm Pharmacal, Ltd. v. Elder Pharmaceuticals, Inc., 862 F.2d 597, 601 (6th Cir. 1988)* (quoting *Fed. R. Civ. P. 56(c)*). The moving party may discharge its burden by demonstrating that the non-moving party has failed to establish an essential element of that party's case for which he or she bears the ultimate burden of proof at trial. *Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986)*. The moving party need not support its motion with affidavits or other materials negating the opponent's claim. *Celotex Corp., 477 U.S. at 323, 106 S. Ct. at 2553*. Although the moving party has the initial burden, that burden may be discharged by a "showing" to the district court that there is an absence of evidence [*6] in support of the non-moving party's case. *Celotex Corp., 477 U.S. at 325, 106 S. Ct. at 2554*.

After the moving party has carried

its initial burden of showing that there are no genuine issues of material fact in dispute, the burden shifts to the non-moving party to present specific facts demonstrating that there is a genuine issue for trial. *Matsushita Elec. Indus. Co., Ltd., v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986). "The 'mere possibility' of a factual dispute is not enough." *Mitchell v. Toledo Hospital*, 964 F.2d 577, 582 (6th Cir. 1992) (citing *Gregg v. Allen-Bradley Co.*, 801 F.2d 859, 863 (6th Cir. 1986)). In order to defeat the motion for summary judgment, the non-moving party must present probative evidence that supports the complaint. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50, 106 S. Ct. 2505, 2510-11, 91 L. Ed. 2d 202 (1986). The non-moving party's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor. *Liberty Lobby*, 477 U.S. at 255, 106 S. Ct. at 2513. The court determines [*7] whether the evidence requires submission to a jury or whether one party must prevail as a matter of law because the issue is so one-sided. *Liberty Lobby*, 477 U.S. at 251-52, 106 S. Ct. at 2512.

III.

*Analysis*

The court begins by addressing plaintiff's allegations in paragraphs 25 and 26 that the seven hours he was detained before his release and the three hours he was held before he was allowed to make a telephone call were unreasonable and in accordance with customs and policies of Sheriff Hutchison. The Constitution does not require that a detained person must be given a telephone call or that such a call must be permitted within a specified period of time. Even if there were such a requirement, three hours would not be an unreasonable length of time.

The seven hours plaintiff was held in the Detention Facility also was not an unreasonable period of time. In *Gerstein v. Pugh*, 420 U.S. 103, 95 S.Ct. 854, 43 L. Ed. 2d 54 (1975), the Supreme Court recognized that "the *Fourth Amendment* requires a judicial determination of probable cause as a prerequisite to extended restraint of liberty following arrest." *Id.* at 114, 95 S.Ct. at 863. [*8] The question of how soon such a determination must be made was addressed by the Supreme Court in *County of Riverside v. McLaughlin*, 500 U.S. 44, 111 S. Ct. 1661, 114 L. Ed. 2d 49 (1991). In *County of Riverside,* the Supreme Court held that "judicial determinations of probable cause within 48 hours of arrest will, as a general matter, comply with the promptness requirement of *Gerstein.*" *Id.* at 56, 111 S. Ct. at 1670. The seven hours plaintiff was detained do not come close to reaching, let alone exceeding, the 48-hour rule set forth in *County of Riverside.*

The allegations in paragraphs 25 and 26 do not state a claim against Sheriff Hutchison for violation of plaintiff's constitutional rights.

The court next considers plaintiff's allegations concerning the Sheriff's official bond. In his motion, Sheriff Hutchison moves for summary judgment on this claim that is set out in paragraph 102 of the complaint. However, the Sheriff does not address this claim in his supporting memorandum, so he has failed to provide the court with any legal argument or authority. In any event, the court has ruled on this issue before.

Plaintiff contends that Sheriff [*9] Hutchison should be liable to him because of his failure to perform the duties he swore to carry out when he took his oath to secure an official bond as required by Tennessee statute. Under *Tennessee Code Annotated §  8-8-103*, a sheriff "shall enter into

an official bond . . . faithfully to execute the office of sheriff and perform its duties and functions during such person's continuance therein." The obligations of the surety and principal are set out in § 8-8-301 of the Tennessee Code Annotated.

*Section 8-8-301* does not create liability. In *Waters v. Bates, 227 F. Supp. 462 (E.D. Tenn. 1964)* this court held that the official bond of a sheriff does not create a private cause of action. The court stated:

> The plaintiff has placed considerable emphasis upon the sheriff's surety bond and the statutory definition of the obligations covered by the bond as set forth in T.C.A. 8-1920 [now § 8-8-301], as forming a basis for imputing to the sheriff and the surety the negligence of [defendant]. However, it is clear that the official bond of a sheriff creates no new cause of action against him and that his official [*10] bond binds him no further than he would be liable without it . . . .

*Id.* at 465-66; *see also Doe v. May, 2004 Tenn. App. LEXIS 407, No. E2003-1642-COA-R3-CV, 2004 WL 1459402, at *5 (Tenn. Ct. App. June 29, 2004)* (citing *Waters* with approval). This claim against Sheriff Hutchison cannot stand.

The court now turns to the remaining allegations against Sheriff Hutchison, which sound in negligence. Paragraphs 94 through 96 speak in terms of the Sheriff breaching his duty as the Sheriff of Knox County and neglecting to train, supervise, and discipline his officers. Thus, plaintiff seeks to hold Sheriff Hutchison personally liable for the alleged constitutional injury caused by the actions of someone else. Supervisory liability standards are employed to analyze the claims. *Doe v. City of Roseville, 296 F.3d 431, 439 (6th Cir. 2002)* (citing *Doe v. Claiborne County, Tenn., 103 F.3d 495, 513 (6th Cir. 1996))*.

Liability under § 1983 cannot be based on *respondeat superior*, i.e., the right to control employees. *Hays v. Jefferson County, 668 F.2d 869, 872 (6th Cir. 1982)*. Supervisory liability must be based on "active [*11] unconstitutional behavior"; the "mere failure to act" is insufficient. *Shehee v. Luttrell, 199 F.3d 295, 300 (6th Cir. 1999)* (citation omitted). "There must be a direct causal link between the acts of individual officers and the supervisory defendants." *Hays, 668 F.2d at 872*. In addition, a claim of failure to supervise or properly train under §1983 cannot be based on simple negligence. *Hays, 668 F.2d at 872* ("Simple negligence is insufficient to support liability of high police officials and municipalities for inadequate training, supervision, and control of individual officers.").

> [A] failure of a supervisory official to supervise, control, or train the offending individual officers is not actionable absent a showing that the official either encouraged the specific incident of misconduct or in some way directly participated in it. At a minimum a plaintiff must show that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers.

*Id.* at 874.

In support of his motion for summary judgment, Sheriff Hutchison submits his [*12] affidavit in which he states as follows: 1) that he never had any physical contact with the plaintiff and he was not involved with the detention and arrest of the plaintiff; 2) that he has had no contact with the plaintiff and has never seen the plaintiff; 3) that he did not know about any complaint by the plaintiff until these complaints were filed; 4) that Deputy Martin has been trained on the issuance of a citation in lieu of custodial arrest, on the lawful use of force, and in accordance with state training requirements as to state and constitutional laws; and 5) that he has never been made aware of any use-of-force problems concerning Deputy Martin. n4 This affidavit has not been refuted by plaintiff and is the only evidence in the case.

> n4 Sheriff Hutchison also states in his affidavit: "My being sued officially, along with Knox County, is redundant and duplicative" and "No individual actions on my part violated any rights of the Plaintiff Lane, if such rights were violated." These statements are obvious conclusions of law and not statements of fact, and they do nothing to refute the plaintiff's allegations.

[*13]

Plaintiff has not made out a claim that Sheriff Hutchison individually deprived him of a right secured by the Constitution. There is no showing that Sheriff Hutchison "either encouraged the specific incident of misconduct or in some other way directly participated in it." The Sheriff's affidavit demonstrates that he had no participation in the alleged incident or the arrest and detention of the plaintiff. The affidavit also specifies the training that Deputy Martin has received. These affirmations by Sheriff Hutchison have not been refuted by the plaintiff. When faced with a summary judgment motion, "the nonmoving party may not rest upon the pleadings but must go beyond the pleadings and 'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'" *Johnson v. City of Cincinnati*, 119 F. Supp.2d 735, 739 (S.D. Ohio 2000) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)).

Plaintiff has failed to demonstrate that Sheriff Hutchison in his individual capacity "committed a constitutional violation []or violated a clearly established right." *Shehee*, 199 F.3d at 300. [*14] Because the facts do not support a claim for a constitutional violation by Sheriff Hutchison, the court need not reach the claim for qualified immunity.

Accordingly, for the reasons stated herein, the "Motion for Summary Judgment of Defendant Timothy Hutchison in His Individual Capacity" [doc. 11] will granted. An order reflecting this opinion will be entered.

Date: 7/8/05

ENTER:

s/ Leon Jordan

United States District Judge

### ORDER

For the reasons stated in the memorandum opinion filed contemporaneously with this order, the "Motion for Summary Judgment of Defendant Timothy Hutchison in His Individual Capacity" [doc. 11] is **GRANTED.** Defendant Timothy Hutchison in his individual capacity is **DISMISSED** from this case.

**IT IS SO ORDERED.**

Date: 7/8/05            s/ Leon Jordan

    ENTER:            United States District Judge


Analysis
As of: May 23, 2007

**JOHNNY LEE TRENT, Plaintiff-Appellant, v. HAWKINS COUNTY, TENNESSEE; HAWKINS COUNTY SHERIFF WAYNE CLEVINGER; HAWKINS COUNTY DEPUTIES BRAD A. DEPEW, IRA J. HINES, and JEFFREY S. GREER; and other UNKNOWN DEPUTIES and POLICE OFFICERS, Defendants-Appellees.**

No. 96-5025

UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT

*1997 U.S. App. LEXIS 1875*

January 29, 1997, FILED

**NOTICE:** [*1] NOT RECOMMENDED FOR FULL-TEXT PUBLICATION. SIXTH CIRCUIT RULE 24 LIMITS CITATION TO SPECIFIC SITUATIONS. PLEASE SEE RULE 24 BEFORE CITING IN A PROCEEDING IN A COURT IN THE SIXTH CIRCUIT. IF CITED, A COPY MUST BE SERVED ON OTHER PARTIES AND THE COURT. THIS NOTICE IS TO BE PROMINENTLY DISPLAYED IF THIS DECISION IS REPRODUCED.

**SUBSEQUENT HISTORY:** Reported in Table Case Format at: *106 F.3d 402, 1997 U.S. App. LEXIS 26796.*

**PRIOR HISTORY:** ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TENNESSEE. 95-00038. Inman (M).

**DISPOSITION:** AFFIRMED.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff, a mentally ill individual who had been shot by a deputy sheriff, appealed an order of the United States District Court for the Eastern District of Tennessee granting summary judgment to defendants, the county that employed the deputy, the sheriff, and two other deputies. Plaintiff asserted his claims against the individuals in their official capacities and the case was treated as one against the county alone.

**OVERVIEW:** Plaintiff was shot when three deputies arrived at his residence to take him into custody pursuant to a committal order. Plaintiff alleged that the deputies had been inadequately trained in handling the mentally ill. The county filed affidavits averring that each of the deputies had all of the training required under state law and that, although the department handled many committals every month, there had been no previous similar incidents. In response, plaintiff filed an affidavit from a retired professor asserting that, under the applicable standard, plaintiff's injury resulted from a training deficiency so obvious and so likely to cause constitutional violations that a jury could properly have found deliberate indifference on

the part of the county. The district court entered summary judgment for the county. On appeal, the court affirmed. The court held that the professor provided no basis for his conclusions that a lack of training was the proximate cause of the shooting or that a jury could have found the county deliberately indifferent under the circumstances. The court concluded that, standing alone, the professor's affidavit was insufficient to create an issue for trial.

**OUTCOME:** The court affirmed the summary judgment of the district court in favor of the county on plaintiff's civil rights claim based on inadequate training of the sheriff's deputies in handling the mentally ill.

**COUNSEL:** For JOHNNY LEE TRENT, Plaintiff - Appellant: Heiskell H. Winstead, Rogersville, TN.

For HAWKINS COUNTY, TN, WAYNE CLEVENGER, Hawkins County Sheriff, BRAD ALLEN DEPEW, Hawkins County Deputy, IRA JOHN HINES, Hawkins County Deputy, JEFFREY SCOTT GREER, Hawkins County Deputy, Defendant - Appellees: Thomas J. Garland, Jr., Jeffrey M. Ward, Milligan & Coleman, Greenville, TN.

**JUDGES:** Before: NELSON and DAUGHTREY, CIRCUIT JUDGES, AND COHN, District Judge. *

---

* The Honorable Avern Cohn, United States District Judge for the Eastern District of Michigan, sitting by designation.

**OPINION BY:** DAVID A. NELSON

**OPINION:**

**DAVID A. NELSON**, Circuit Judge. This is an appeal from a summary judgment for the defendants in a civil rights case brought [*2] by a mentally ill person who was shot in the leg while being taken into custody by three deputy sheriffs. The county that employed the officers had given them no in-depth specialized training in dealing with the mentally ill -- and the questions on appeal are (1) whether the need for such training was so obvious, and the lack of it so likely to result in constitutional violations, that a jury could properly have found the county and its policymakers guilty of deliberate indifference to the constitutional rights of those in the plaintiffs situation, and (2) if so, whether a jury could properly have found that the plaintiffs rights were violated as a proximate result of the lack of training. Concluding, upon *de novo* review, that neither question can be answered as the plaintiff would have us answer it, we shall affirm the judgment entered by the district court.

I

On the evening of Sunday, January 30, 1994, Ms. Angela Lee Luster, the daughter of plaintiff Johnny Lee Trent, went to the Sheriffs Department of Hawkins County, Tennessee, to discuss a problem concerning her father. According to the complaint subsequently filed in this case. Ms. Luster told Sgt. Brad Depew "that [*3] her father was mentally ill, that he was a Vietnam Veteran, that he was acting strangely and that he [might] be dangerous due to his mental condition." According to a statement given by Sgt. Depew on January 31, 1994, Ms. Luster told the Sergeant "that her dad (Johnny Trent) had been threatening some guy with a gun and stated that this was the second time Trent had done this." The complaint alleges that Mr. Trent was "extremely paranoid" and was "suffering from a bipolar manic condition."

After consultation with a deputy circuit count clerk, Sgt. Depew and Ms. Luster decided to seek an

emergency committal to an area mental hospital. In this connection Ms. Luster apparently signed an affidavit requesting that Mr. Trent be taken into custody for examination by a physician.

Because of Mr. Trent's previous problems, Sgt. Depew asked two other officers -- Corporal Jeffrey S. Greer and Patrol Officer Ira J. Hines -- to accompany him to Mr. Trent's house. Sgt. Depew rode with Corporal Greer in one cruiser, and Officer Hines took another vehicle. The three deputies arrived at the house sometime after 11 p.m. Corporal Geer pulled his cruiser into the driveway first, followed by Officer [*4] Hines. Greer left his headlights on, according to his statement, so that they illuminated the north side of the house. Mr. Trent, according to an affidavit he executed in October of 1995, was inside the house "cleaning some guns."

The officers stepped out of their cruisers and saw Mr. Trent through a window. Shouting "police" or "sheriff," they took up positions around the porch. Mr. Trent came to his front door carrying a gun pointed upwards. The officers-shouted at him to drop the gun, according to their statements, and Mr. Trent's affidavit says that he turned to his right to lay the gun down. At this juncture, the affidavit continues, "I was shot by someone in the shadows to my left whom I had not seen." (The affidavit also says that "at the time I had been suffering from extreme amnesia ....")

The statement given by the officer who fired the shot, Sgt. Depew, indicates that although Mr. Trent had been pointing his gun in the air, he brought it down to about his waist and pointed it straight at Depew; that Depew, who could see Trent's finger on the trigger, told him again to drop the gun; that Trent did not do so; and that Depew, "very scared for my life and the lives of the [*5] other officers," then decided to fire The shot hit Mr. Trent in the leg.

Mr. Trent pushed himself back into the house, according to his affidavit, and fired five shots into the walls "to prevent them from shooting me again." (The affidavit goes on to say that "I do not believe my thoughts were completely rational at the time due to my mental illness.") Mr. Trent eventually came out of the house with his hands up, in compliance with commands shouted by the officers, and he was taken into custody without further incident.

Almost a year later Mr. Trent instituted the present civil rights action against Hawkins County, Sheriff Wayne Clevinger, and the three deputies. By consent of the parties the case was referred to a magistrate judge for final disposition.

The defendants subsequently filed a motion for summary judgment, accompanied by affidavits from Sheriff Clevinger and Sgt. Depew. Among the facts to which the Clevinger affidavit attested were these: that the three deputies were all certified law enforcement officers, hired in compliance with official standards; that each deputy was a graduate of the Tennessee Law Enforcement Academy and had completed all necessary in-service training [*6] every year since being certified; that Tennessee law does not require that a certified law enforcement officer be given any detailed training in how to perform an emergency committal; that the Sheriffs Department handles many such committals every month; that virtually all committals have been accomplished without incident, this being the only one in which a firearm was discharged; and that "there are no prior incidents which have indicated a need for any specialized training on emergency committals."

Attached to the Clevinger affidavit was a three-page handout entitled "Handling Abnormal People;" this

document was said to have been among the materials used at the Tennessee Law Enforcement Academy in 1991. Sgt. Depew, in his affidavit, said that he recalled having received a similar handout in 1989. In his deposition, excerpts from which accompanied Mr. Trent's brief in opposition to the summary judgment motion, Sgt. Depew testified that his training program involved some discussion of dealing with mentally ill people, but not a great deal. He did not recall any in-depth training on the subject. Neither of the other deputies, according to their depositions, received in-depth training [*7] on the mentally ill either. Officer Hines' deposition does refer to training with regard to Emotionally Disturbed Persons, but the training was geared toward officer protection and survival. Officer Hines was not taught anything about paranoia, he testified.

Characterizing the issue in this case as "whether the lack of specific or specialized training regarding how to take a mental ill person into custody constitutes . . . 'deliberate indifference' that amounts to a deprivation of constitutional rights," the district court (Inman, M.J.) concluded as a matter of law that no such deliberate indifference could be shown here. An order was entered granting the motion for summary judgment and dismissing the action, and the plaintiff perfected a timely appeal.

II

Plaintiff Trent conceded at an early stage of the litigation that the defendant officers had been sued only in their official capacities. The district court therefore viewed the case, properly, as one against the county alone.

It is undisputed that a county cannot be held liable for its employees' conduct on a *respondeat superior* theory. See *Searcy v. City of Dayton,* 38 F.3d 282, 286 (6th Cir. 1994)(in an action [*8] brought against a municipality under 42-U.S.C. § 1983, "the doctrine of respondeat superior is inapplicable"). To recover damages from the county for his injuries, Mr. Trent would have to prove that "those injuries were the result of an unconstitutional policy or custom of the County." *Matthews v. Jones,* 35 F.3d 1046, 1049 (6th Cir. 1994).

Where, as here, the existence of an unconstitutional policy or custom is sought to be established on the basis of an alleged deficiency in police training, liability can be established "only where the failure to train amounts to *deliberate indifference* to the rights of persons with whom the police come into contact." *City of Canton v. Harris* 489 U.S. 378, 388, 103 L. Ed. 2d 412, 109 S. Ct. 1197 (1989) (emphasis supplied). A rule that would allow the governmental body to be held liable for any lesser degree of fault -- *e.g.* the more relaxed rule that our own court endorsed in the decision reversed by the Supreme Court in *City of Canton* -- would be "overly broad." *Id*. Liability cannot attach in a case of this type unless "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation [*9] of constitutional rights, that the policymakers of the [governmental body] can reasonably be said to have been deliberately indifferent to the need." *Id. at 390.* And even where training deficiencies are so gross as to bespeak deliberate indifference, there can be no recovery of damages unless "the inadequacy is 'closely related to' or 'actually caused' the plaintiff's injury." *Matthews v. Jones,* 35 F.3d at 1049 (citations omitted).

In the case at bar the plaintiff relies on an affidavit executed by Dr. George Kirkham, a retired professor at Florida State University School of

Criminology and Criminal Justice, to show that the injury did indeed result from a training deficiency so obvious and so likely to cause constitutional violations that a jury could properly have found "deliberate indifference" on the part of Hawkins County's policymakers. We are not persuaded that Dr. Kirkham's affidavit was adequate to accomplish this difficult task.

Dr. Kirkham expressed the opinion that the procedures employed in taking Mr. Trent into custody -- procedures characterized by the affiant as "highly confrontational and escalatory" -- violated well established law enforcement standards [*10] and were foreseeably dangerous. The conduct of the three officers was "reckless," in Dr. Kirkham's view. The affiant attributed the officers' conduct to a "failure of the Hawkins County Sheriffs Department to assure that its supervisors and line officers received minimally acceptable training with respect to both recognizing and properly reacting to mentally ill individuals."

The notion that the officers did what they did in this case because of any lack of training in "recognizing" mentally ill individuals is clearly inconsistent with the record. Paragraph 6 of the plaintiffs complaint acknowledges that Angela Luster told Sgt. Depew in so many words that her father was mentally ill and might be dangerous due to his mental condition. The very reason the officers were attempting to take Mr. Trent into custody late on a Sunday evening was that his daughter had said she wanted him committed to a mental hospital on an emergency basis. Everyone was aware of Mr. Trent's previous problems, moreover, which is why no fewer than three officers went to the house where Mr. Trent was cleaning his guns. There was obviously no difficulty in "recognizing" mental illness here.

Dr. Kirkham may have [*11] been on firmer ground in his criticism of the procedures employed by the officers -- and we take it as given, for summary judgment purposes, that the procedures violated established professional standards. Dr. Kirkham does not explain the basis for his conclusion that a lack of acceptable training was the proximate cause of the officers' "reckless" conduct, however, and his affidavit fails to demonstrate that a need for better training was so obvious, and the inadequacy of the training received by the officers so likely to result in violations of constitutional rights, that the policymakers of Hawkins County could reasonably be said to have been "deliberately indifferent" to the need.

From the vantage point of the policymakers, the somewhat rudimentary tutelage that Sgt. Depew and other alumni of the Tennessee Law Enforcement Academy received in "Handling Abnormal People" did not appear to have caused any difficulty' in the past. It is undisputed that every month the Sheriffs Department performed "many" emergency committals of persons suspected of being mentally ill -- yet never before had a serious problem arisen. And so lacking in "obviousness" was the need for more intensive training [*12] that no such training was required by Tennessee law, nor was it offered by the state law enforcement academy. If under the facts presented here, a jury could be allowed to find the policymakers guilty of "deliberate indifference" on the strength of Dr. Kirkham's affidavit virtually any perceived deficiency in training could result in liability in virtually any excessive-use-of-force case, it seems to us. n1 Such a broadening of governmental liability would clearly be inconsistent with the Supreme Court's opinion in *City of Canton*.

n1 Even if it could be deemed

proper to let a jury find Hawkins County guilty of deliberate indifference in failing to require more or better training in dealing with the mentally ill, moreover, it is difficult for us to understand how it could have been proper to let the jury find a causal link between the quality of Sgt. Depew's training and the injury sustained by Mr. Trent. Sgt. Depew may have been mistaken when he concluded that Mr. Trent was aiming his weapon rather than laying it down, but no amount of instruction in dealing with the mentally ill could possibly insure that mistakes of this type will never occur.

[*13]

The decision in *Russo v. City of Cincinnati*, 953 F.2d 1036 (6th Cir. 1992) -- a case that Mr. Trent did not cite to the district court, but on which he relies heavily in his brief on appeal -- does not compel a contrary conclusion. Although there are a number of similarities between that case and this one, we do not believe that the rationale on which this court reversed a summary judgment for the defendants in *Russo* was so broad as to necessitate reversal of the judgment entered by the district court here.

*Russo* was a civil rights case brought by the estate and family of a man named Thomas Bubenhofer. Although diagnosed as a paranoid schizophrenic by physicians at a psychiatric institution, Mr. Bubenhofer had been given a two-hour pass and had gone home to his apartment with his sister, Karen Russo. Mr. Bubenhofer told Ms. Russo that he did not want to return to the psychiatric institution, and he eventually locked himself in the apartment. Three officers who had heard a police radio broadcast describing Mr. Bubenhofer as "suicidal, homicidal, and a hazard to police" attempted to take him into custody. Although told by Ms. Russo that Bubenhofer was alone in the apartment [*14] and did not have a gun, the officers forced the apartment door open, stunned Mr. Bubenhofer (who was holding two butcher knives) with a series of Taser darts, and shot him a total of 22 times with their service revolvers. Mr. Bubenhofer died the next day.

One of the claims in the ensuing lawsuit was that Mr. Bubenhofer's constitutional rights had been violated as a proximate result of the defendant city's failure to train its officers adequately. In support of the contention that the officers' training was constitutionally defective, the plaintiffs offered the testimony of Dr. George Kirkham -- the same expert witness whose affidavit is before us here -- together with an Office of Municipal Investigation report in which the city's own investigators concluded that the training was inadequate. The district court entered summary judgment for the city on the failure-to-train claim, but a divided panel of this court reversed on the ground that there was a genuine issue of material fact. Judge Jones wrote the lead opinion, Judge Wellford concurred separately, and Judge Suhrheinrich dissented.

Focusing primarily on the question whether the plaintiffs' evidence was sufficient to suggest [*15] inadequacies in the city's training program, the lead opinion rejected an argument by the city that Dr. Kirkham's testimony should be disregarded as conclusory. "Reliance on expert testimony is particularly appropriate," the lead opinion stated, "where, as here, the conclusions rest directly upon the expert's review of materials provided by the City itself." *Russo*, 953 F.2d at 1047.

Judge Wellford, concurring separately, pointed out that

"in order to hold the City liable, the factfinder would have to find that the inadequacy of training was so likely to result in the constitutional injury to mentally ill persons, that the City's policymakers could be deemed to be callous and indifferent to the need for training in that area.

* * *

Plaintiff must carry the heavy burden of proving the City's alleged policy of deliberate indifference and that the deficiency, if any, was a proximate cause of the death." *Id. at 1049*.

Judge Wellford went on to describe testimony in which Dr. Kirkham opined that the officers' ignorance of the appropriate procedures for "barricaded person" situations was linked to inadequate training -- and Dr. Kirkham's testimony, Judge Wellford **[*16]** indicated, was not in itself strong enough to defeat the summary judgment motion. "In my view," Judge Wellford wrote, "to maintain plaintiffs' claim against the City, *plaintiffs must make a stronger showing than this.*" *Id*. (Emphasis supplied.) In light of all the evidence, however, including the report of the Office of Municipal Investigation, Judge Wellford opted "to give plaintiff the benefit of doubt" on this "close and difficult" issue. *Id.*

Judge Wellford's vote in *Russ* was the deciding one, Judge Suhrheinrich having dissented. We take it from his concurring opinion that Judge Wellford would have opted to affirm the summary judgment for the defendants *if* the plaintiffs had been unable to point to any thing more than the testimony of Dr. Kirkham.

In the case at bar, of course. Dr. Kirkham's affidavit is essentially all the plaintiff has. Here there is nothing comparable to the report of the Office of Municipal Investigation, for example. Judge Wellford would probably characterize the present case as a close and difficult one too -- a characterization with which we would agree -- but the logic of Judge Wellford's concurrence in *Russo*, as we read it, points to **[*17]** affirmance of the judgment for the defendants in the case at bar.

Accordingly, and for essentially all of the reasons set forth in the opinion of Magistrate Judge Inman, as well as the reasons stated herein, the summary judgment is **AFFIRMED**.