## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
## AT KNOXVILLE

| | |
|---|---|
| LESTER EUGENE SILER, et al., | ) |
| | ) |
| **Plaintiffs,** | ) |
| | ) |
| v. | ) No. 3:05-cv-341 |
| | ) Edgar/Guyton |
| GERALD DAVID WEBBER, et al., | ) |
| | ) |
| **Defendants.** | ) |

### PLAINTIFFS' RESPONSE TO DEFENDANTS' CHARLES SCOTT, RON MCCLELLAN, AND CAMPBELL COUNTY'S MOTION FOR SUMMARY JUDGMENT

### SUMMARY JUDGMENT STANDARDS

The party bringing the summary judgment motion has the initial burden of identifying portions of the record that demonstrate the absence of a genuine dispute over material facts. *Mt. Lebanon Pers. Care Home, Inc. v. Hoover Universal, Inc.,* 276 F.3d 845, 848 (6th Cir. 2002). The moving party may satisfy this burden by presenting affirmative evidence that negates an element of the non-moving party's claim or by demonstrating "an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

In determining whether summary judgment is proper, the Court must look at the record in the light most favorable to the party opposing the motion. *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 2744 (1982). Inferences to be drawn from the underlying facts must also be viewed "in the light most favorable to the party opposing the motion." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

The Court does not weigh disputed evidence, decide questions of credibility of witnesses, or draw inferences about knowledge and intent of parties from conflicting

evidence. *Hanover Ins. Co. v. American Engineering Co.*, 33 F.3d 727 (6th Cir. 1994). The Court may consider the implausibility of inferences from circumstantial evidence, but not the credibility of direct evidence. *Adams v. Metiva*, 31 F.3d 375 (6th Cir. 1994).

Summary judgment is generally considered inappropriate where issues involve state of mind, motive or intent. *Perry v. McGinnis*, 209 F.3d 597, 601-602 (6th Cir. 2000); *Kand Medical, Inc. v. Freund Medical Products, Inc.*, 963 F.2d 125 (6th Cir. 1992); *Wilson v. Seiter*, 893 F.2d 861 (6th Cir. 1990); *Cooper v. North Olmsted*, 795 F.2d 1265, 1272 (6th Cir. 1986). This rule exists because of the likelihood of self-serving testimony concerning a parties' state of mind and the necessity for the fact finder's credibility determinations. *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432 (6th Cir. 1987).

In the most recent Sixth Circuit case addressing summary judgment standards for deliberate indifference claims, summary judgment was reversed and the Court held that corrections officers and a jail nurse were not entitled to qualified immunity. *Taylor v. Franklin County, Kentucky*, No. 02-6470, 104 F.Appx. 31 (6th Cir. July 14, 2004.)  In another recent case, the court dismissed the defendants' appeal from denial of qualified immunity because of a factual dispute concerning the officers' conduct. *McDougal v. Williams*, No. 03-5694, 79 F.Appx. 100 (6th Cir. October 22, 2003.)

## STATEMENT OF FACTS

On or about July 8, 2004, the Defendants, Gerald Webber, Samuel Franklin, Joshua Monday, Shayne Green, and William Carroll, (hereinafter referred to as "Webber", "Franklin", "Monday", "Green", and "Carroll") who were employed as law enforcement officers for the Campbell County Sheriff's Department went to the home of Lester Eugene Siler, Jenny Siler, and Dakota Siler.  (Complaint.)  That the Defendants, Webber, Franklin, Monday, Green, and Carroll agreed to threaten, intimidate and physically assault the Plaintiff, Lester

Eugene Siler, in order to obtain his consent to search his residence.  (Id)  Defendant Webber

instructed three of the officers to handcuff the Plaintiff, Lester Eugene Siler, outside his home,

bring him inside, and force him to sit in a chair.  (Complaint.)  That the Defendants, Webber,

Franklin, Monday, Green, and Carroll, ordered the Plaintiff's, Jenny Siler and Dakota Siler to

leave their home, and stand at the roadway in the blistering July sun for hours.  (*Id.*)  That on

July 8, 2004, the Defendants, Webber, Franklin, Monday, Green, and Carroll, repeatedly

threatened the Plaintiff, Lester Eugene Siler, with severe bodily harm unless he cooperated

by signing a consent to search form which he had the constitutional right to refuse to sign.

(*Id.*)  These threats included, but were not limited to threats to shoot Lester Eugene Siler, to

beat him, to electrocute him, to kill him, to burn him with a cigarette lighter, and to break his

fingers.  (*Id.*) On July 8, 2004, the Defendants, Webber, Franklin, Monday, Green, and

Carroll, attached wires from a battery charger to Lester Eugene Siler, and threatened to

electrocute him.  (*Id.*)  Defendant Webber, encouraged the Defendants, Franklin, Monday,

Green, and Carroll, to slap, hit, punch, kick, and otherwise unlawfully assault the Plaintiff,

Lester Eugene Siler, while he was handcuffed and not resisting, thereby causing bodily injury.

(*Id.*)

        On July 8, 2004, each of the Defendants, Webber, Franklin, Monday, Green, and

Carroll, failed to intervene when other officers used dangerous weapons, including, but not

limited to, a firearm, a slap jack, a plastic ball bat, or other similar objects to threaten,

intimidate and beat Lester Eugene Siler, while he was handcuffed and not resisting, causing

him bodily injury.  (*Id.*)  That the Defendant, Monday, did willfully and unlawfully brandish a

handgun and placed that handgun in the mouth of the Plaintiff, Lester Eugene Siler, and

threatened to kill the Plaintiff.  (*Id.*)

        On July 8, 2004, the Defendants Webber, Franklin, Monday, Green, and Carroll,

conspired to lie, and made up lies to unlawfully arrest the Plaintiffs, Lester Eugene Siler and

Jenny Siler, on false charges. (*Id.*) The Defendants, Webber, Franklin, Monday, Green, and Carroll, then arrested the Plaintiffs, Lester Eugene Siler and Jenny Siler. (*Id.*)

Upon being incarcerated in the Campbell County Jail, the Plaintiff, Lester Eugene Siler, requested medical attention numerous times for his injuries, however, he was denied medical attention. (*Id.*) That the Plaintiff, Lester Eugene Siler, also asked the on duty jailer for medical attention, however, he was told to "sit down and shut up, you got what you deserved". (*Id.*) Further, the Plaintiff, Lester Eugene Siler, was not permitted to make a telephone call while incarcerated at the Campbell County Jail. (*Id.*)

The Plaintiffs, Lester Eugene Siler and Jenny Siler, were incarcerated in the Campbell County Jail for a period of time. (*Id.*) Both were eventually able to bond out of jail, after securing and paying a bonding company. (Complaint.) Plaintiffs' charges were ultimately dismissed. (Complaint.)

The occurrences from July 8, 2004 were recorded on audiotape by the Plaintiff, Jenny Siler. The audiotape was provided to the Tennessee Bureau of Investigation, and on or about July 13, 2004, the Defendants, Webber, Franklin, Monday, Green, and Carroll were terminated from their employment with the Campbell County Sheriff's Department. (*Id.*) Further, the Defendants, Webber, Franklin, Monday, Green, and Carroll, lied to the Tennessee Bureau of Investigation when questioned about the incident on July 8, 2004. (*Id.*)

On or about July 28, 2004, the Defendants, Webber, Franklin, Monday, and Green were indicted by the Campbell County Grand Jury on charges of official misconduct and for making a false material statement, under oath, in connection with the official proceeding. (*Id.*) On or about February 3, 2005, the United States attorneys office filed an information in the United States District Court for the Eastern District of Tennessee at Knoxville against the Defendant, Joshua Monday, charging the Defendant with willfully brandishing a handgun during and in relation to a crime of violence, namely conspiracy against rights secured by the

Constitution of Law of the United States in violation of 18 U.S.C. Section 924(c). (*Id.*) On or about February 3, 2005, the United States Attorneys office filed informations in the United States District Court for the Eastern District of Tennessee at Knoxville against the Defendants, Webber, Franklin, Green, and Carroll, charging the Defendants with conspiracy to commit civil rights violations in violation of 18 U.S.C. Section 241. (*Id.*)

Defendants, Webber, Franklin, Monday, Green, and Carroll all plead guilty to civil rights violations. (Complaint.) More Specifically, on or about February 22, 2005, the Defendant, Webber, plead guilty in Federal Court to knowingly violating 18 U.S.C. Section 241; on or about February 23, 2005, the Defendant, Franklin, plead guilty in Federal Court to knowingly violating 18 U.S.C. Section 241; on or about February 24, 2005, the Defendant, Joshua Monday, plead guilty in Federal Court to knowingly violating 18 U.S.C. Section 924(c) and 18 U.S.C. Section 241; on or about February 24, 2005, the Defendant, Green plead guilty in Federal Court to knowingly violating 18 U.S.C. Section 241; and on or about May 23, 2005, the Defendant, Carroll, plead guilty in Federal Court to knowingly violating 18 U.S.C. Section 241. (Id) The Defendants, Webber, Franklin, Monday, Green, and Carroll, are currently serving Federal Prison Sentences. (*Id.*)

The Defendant, Ron McClellan, was the Sheriff of Campbell County on July 8, 2004. (Complaint, Defendants' Exhibit 1, at Paragraph 1.) The Defendant, Ron McClellan, "did direct those guys(Defendants) to get (Siler)". . . "We just made it a top priority". (Plaintiffs' Exhibit 1, LaFollette Press Article) Further, the Defendant, Ron McClellan, stated that "he did not know then that we already had a paper on him," referring to a probation violation warrant issued in March on Siler." (Plaintiffs' Exhibit 2, Knoxville News Sentinel Article.)

The Defendant, Charles Scott, was the Chief Deputy of the Campbell County Sheriff's Department on July 8, 2004. (Complaint, Defendants' Exhibit 2, at Paragraph 1-2.) The Defendant, Charles Scott, was aware that Defendants, Webber, Franklin, Monday,

Green, and Carroll were going to the Siler residence on July 8, 2004.  (Defendants' Exhibit 2, at Paragraph 5.)  Further, the Defendant, Charles Scott, has been present on a traffic stop wherein officers were abusing the individuals that were involved in the traffic stop.  (Miracle Affidavit, Plaintiffs' Exhibit 3.)  That the Defendant, Charles Scott watched the officers abusing these individuals but did nothing to stop the abuse.  (Miracle Affidavit, Plaintiffs' Exhibit 3.)  Further, the Defendant Charles Scott did not reprimand any of the officers involved in said abuse.  (Miracle Affidavit, Plaintiffs' Exhibit 3.)

The Defendants, Ron McClellan and Charles Scott, were in charge of hiring and training deputies at the Campbell County Sheriff's Department.  The Defendants have stated that only three of the five deputies were full-time employees assigned law enforcement roles. (McClellan Affidavit, Paragraph 3.)  The Defendants have further stated that Defendant, Josh Monday, had just been promoted the preceding month from Corrections to Patrol, and had not been, but was scheduled to attend, the Academy.  (McClellan Affidavit, Paragraph 3.) However, those statements are incorrect.  Defendant Monday had actually been promoted on paper in March, 2004, to uncertified deputy.  (Plaintiffs' Exhibit 4.)  However, the Defendant, Monday, had been a deputy according to court documents in Campbell County, Tennessee, since 2003.  (Plaintiffs' Collective Exhibit 5.)

Further, Defendants, Ron McClellan and Charles Scott, have stated that Defendant, William Carroll was not assigned a law enforcement role, and was over Fleet Maintenance.  (McClellan Affidavit, Paragraph 3.)  Again, that statement is false.  Defendant William Carroll was promoted to full-time uncertified deputy on March 15, 2004.  (Plaintiffs' Exhibit 6.)  Further, Defendant William Carroll had been a deputy according to court documents in Campbell County, Tennessee, since 2004.  (Plaintiffs' Collective Exhibit 7.)

Defendants, Ron McClellan and Charles Scott, have stated that Defendant Green was a part-time process server.  (McClellan Affidavit, Paragraph 3.)  However, according to

court documents in Campbell County, Tennessee, Defendant Green had been a deputy since 2004. (Plaintiffs' Collective Exhibit 8). Further, Defendant Green had a prior charge for Domestic Violence that was to be dismissed upon payment of costs, as well as two Orders of Protections that had been granted against him. (Plaintiffs' Collective Exhibit 9.) One of the Orders of Protection was questionably dismissed. (Plaintiffs' Collective Exhibit 9.) However, the Order of Protection that was not dismissed stated that Defendant Green threatened to kill, beat and cause bodily harm to the Petitioner. (Plaintiffs' Collective Exhibit 9.) The Defendants, Ron McClellan and Charles Scott, either were aware of Defendant Green's behavior, or should have been aware since it was public record in Campbell County, Tennessee.

Further, at sentencing in Federal Court, several of the Defendants argued that they had never received law enforcement training. (Federal Sentencing Hearings.) Judge Varlan stated that "we also think the sheriff's department has a responsibility in choosing the men and women it puts on the street to protect the county's citizens." (Plaintiffs' Exhibit 10, Knoxville News Sentinel.) Further, in referring to Defendant William Carroll, Judge Varlan stated "to say that this man should not have been a police officer is a huge understatement". (Id) Defendant William Carroll was identified as mentally challenged. (Federal Sentencing Hearing.) Judge Varlan further stated "[q]uite frankly, it was disgraceful for the sheriff's department to put him out on the streets. (Plaintiffs' Exhibit 10, Knoxville News Sentinel.)

The Defendants, Ron McClellan and Charles Scott, not only failed to train and supervise the Defendants, but further, allowed at least one Defendant, who was identified as mentally challenged, to be a deputy with the Campbell County Sheriff's Department.

Defendants Ron McClellan and Charles Scott have hired other individuals to work as uncertified deputies and as reserve officers that had a criminal history. Specifically, the Defendants' hired Daniel Pedrin to work as an uncertified deputy on December 8, 2004.

(Plaintiffs' Exhibit 11.)  Prior to that date, Daniel Pedrin was employed as a corrections officer with the Campbell County Sheriff's Department.  (Plaintiffs' Exhibit 11.)  Daniel Pedrin was convicted of no driver's license in November, 2003.  (Plaintiffs' Exhibit 12.)  Daniel Pedrin was charged with two counts of passing worthless checks which were returned unserved in 2001.  (Plaintiffs' Exhibit 13).  Furthermore, the Defendants Ron McClellan and Charles Scott hired a convicted felon as a reserve deputy.  (Plaintiffs' Exhibit 14).  This information was readily available to the Defendants since all documents were on record in the Campbell County Courthouse.

## LAW AND ARGUMENT

I.      **DEFENDANT SCOTT AND MCCLELLAN DO NOT HAVE QUALIFIED IMMUNITY UNDER TENNESSEE COMMON LAW.**

Plaintiff's would show that Defendants McClellan and Scott directed and knew that Defendants Webber, Franklin, Monday, Green, and Carroll were going to the Siler residence on July 8, 2004.  Further, Defendants McClellan and Scott were aware that Defendants, Monday, Green, and Carroll, were not P.O.S.T. certified police officers and did not have any training to be police officers.  Also, Defendants McClellan and Scott knew or should have known that Defendant Green had a prior history of violence. (Plaintiffs' Exhibit 8)  Defendants McClellan and Scott exhibited a deliberate indifference to the rights of the persons with whom the deputies came into contact with.  These were not planning, policy-making or discretionary acts. These were operational acts, for which immunity is removed. T.C.A. § 29-20-205(1); *Bowers v. City of Chattanooga*, 826 S.W.2d 427, 431 (Tenn. 1992).

In *Bowers v. City of Chattanooga*, the Court adopted the planning-operational test under which it is the "nature of the conduct," that is, the decision-making process, and not the "status of the actor," *Bowers*, 826 S.W.2d at 430-31, that governs whether the exception applies. *See also United States v. Gaubert*, 499 U.S. 315, 322 (1991).

Decisions that merely implement preexisting policies and regulations are considered to be operational in nature and require the decisionmaker to act reasonably in implementing the established policy. If the policy, regulation, or other standard of procedure mandates specific conduct, then any employee reasonably complying with that direction will not abrogate the entity's immunity if the action furthers the underlying policies of the regulation. *See generally Chase v. City of Memphis*, 971 S.W.2d 380, 384 (Tenn. 1998). If such an employee does not act reasonably but pursues a course of conduct that violates mandatory regulation, the discretionary function exception will not apply because the action would be contrary to the entity's established policy. *Id.; see also Gaubert*, 499 U.S. At 324.

II.    **CAMPBELL COUNTY IS NOT ENTITLED TO SUMMARY JUDGMENT BECAUSE PLAINTIFFS CAN PRODUCE ADMISSIBLE EVIDENCE OF NEGLIGENCE BY A COUNTY EMPLOYEE THAT PROXIMATELY CAUSED PLAINTIFFS' HARM BY THE FIVE DEPUTIES**

Defendant Ron McClellan directed the five deputies to get Siler.  (Plaintiffs' Exhibit 1)  It was a top priority.  (Id)  Defendant Charles Scott knew that the five deputies were going to the Siler residence on July 8, 2004.  (Defendants' Exhibit 2, at Paragraph 1-2)  Both Charles Scott and Ron McClellan knew or should have known that Defendant Green had an Order of Protection granted against him.  (Plaintiffs' Collective Exhibit 8.)  Further, both Charles Scott and Ron McClellan knew or should have known that Defendant Green had a prior charge for Domestic Violence, a history of violent behavior.  (Plaintiffs' Collective Exhibit 8.)  After all, these records are public records in Campbell County, Tennessee.  Furthermore, one would wonder if this information should have been discovered on a background check or an employment application.

Defendants Ron McClellan and Charles Scott were aware that three of the deputies did not have any training.  Specifically, Charles Scott signed the necessary paperwork promoting these officers to their respective positions.  (Plaintiffs' Exhibits 4,5,6,7.)

Defendants, Ron McClellan and Charles Scott, knew that these officers were not properly trained and supervised on July 8, 2004, when they sent the five deputies to the Siler residence. However, Defendants, Ron McClellan and Charles Scott, did not care that these officers had not been to the academy and that they were not trained to be around the public.

Furthermore, Defendant Charles Scott has allowed other officers to abuse individuals, and has done nothing to reprimand the officers for participating in abuse. (Miracle Affidavit, Plaintiffs' Exhibit 3.) Also, the Defendants Ron McClellan and Charles Scott have failed to have any type of screening process regarding individuals employed by the Campbell County Sheriff's Department, in that the Defendants allowed individuals to be employed that were convicted felons or had prior arrest records.

Defendants Ron McClellan and Charles Scott had a duty to train and supervise these officers before they sent them into the public. However, the Defendants did not train nor supervise these officers, and therefore, breached the duty of care owed to the public, and as a result, those untrained, unsupervised officers went to the home of the Plaintiffs and assaulted and tortured the Plaintiff. Defendants Ron McClellan and Charles Scott's failure to train and supervise the deputies amounted to a deliberate indifference to the rights of the persons to whom the deputies came into contact with.

III.     **THE DEFENDANTS ARE NOT ENTITLED TO QUALIFIED IMMUNITY BECAUSE A REASONABLE JUROR COULD CONCLUDE THEIR ACTIONS WERE NOT OBJECTIVELY REASONABLE.**

The Defendants individually have presented no affirmative evidence suggesting there was no detrimental effect caused by their failure to train and supervise the five officers. Thus, the burden has not shifted to the Plaintiff to produce affirmative evidence in support of her claims against each individual defendant. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Instead, the individual Defendants argue collectively that their actions were objectively reasonable.

Plaintiff's would show that the Defendants' actions were not objectively reasonable. Specifically, it is not objectively reasonable to hire officers who have prior criminal records. (Plaintiffs' Exhibits 9,11,12,13,14.) It is not objectively reasonable to place uncertified deputies in the community without obtaining proper training for the officers. (Plaintiffs' Exhibits 4,5,6,7,11.)

Further, a reasonable officer in the Defendants' position would not send uncertified deputies to get an individual. (Plaintiffs' Exhibit 1.) A reasonable officer would not allow officers to abuse individuals in their presence, and as their superior officer, do nothing. (Miracle Affidavit, Plaintiffs' Exhibit 3.) The conduct that occurred at the Siler residence is also not reasonable. Because the Defendants' actions were not reasonably objective, the Defendant's are not entitled to qualified immunity.

**IV.    PLAINTIFFS' § 1983 CLAIM AGAINST CAMPBELL COUNTY CANNOT BE DISMISSED BECAUSE A REASONABLE JUROR COULD CONCLUDE THAT CUSTOMS AND POLICIES OF THE CAMPBELL COUNTY SHERIFF'S DEPARTMENT CAUSED THEIR INJURIES.**

The Defendants had a custom or policy of failing to train and supervise the individuals hired at the Campbell County Sheriff's Department. (Plaintiffs' Exhibits 4,5,6,7.) The Defendants allowed individuals to work as uncertified deputies on many occasions. (Plaintiffs' Exhibits 4,5,6,7,11.) These officers were not scheduled to attend the academy, even though the officers were required to be certified within a set time period. Rather, the Defendants sent individuals to the academy whenever they wanted. This happened on many occasions. (Plaintiffs' Exhibits 4,5,6,7,11.)

A reasonable jury could conclude that Campbell County had a policy of not training and supervising the deputies it hired.

The Defendants had a custom or policy of failing to employ individuals who did not have prior criminal backgrounds. (Plaintiffs' Exhibits 9,11,12,13,14.) The Defendants hired

individuals that had Domestic Violence charges, Orders of Protection, no driver's license, and were convicted felons.  (Plaintiffs' Exhibits 9,11,12,13,14.)

A reasonable jury could conclude that Campbell County had a policy of not checking the criminal backgrounds of the individuals it hired.

The Defendants had a custom or policy of allowing its officers to abuse individuals. Defendant Charles Scott, who was the Chief Deputy, in charge of making decisions along with the Sheriff, allowed officers to abuse individuals, and did nothing to stop said behavior, and more importantly, did nothing to reprimand the officers.  (Miracle Affidavit, Plaintiffs' Exhibit 3).

A reasonable jury could conclude that Campbell County had a policy allowing abuse of individuals by officers.

The Defendants, Ron McClellan and Charles Scott allowed uncertified, untrained, and unsupervised officers to work at the Campbell County Sheriff's Department regularly. (Plaintiffs' Exhibits 4,5,6,7,11.)  The Defendants had a custom or policy of failing to employ individuals who did not have prior criminal backgrounds.  (Plaintiffs' Exhibits 9,11,12,13,14.) This information was readily available to anyone who cared to know, and therefore, policy makers in Campbell County were on notice of the deficiencies at the Campbell County Sheriff's Department.  The Defendants' combined actions amounted to a complete failure to train the police force, and were so grossly negligent that future police misconduct was inevitable.  The Defendants' combined conduct was such that they acted with a deliberate indifference to the rights of the citizens that the officers came in contact with.

RESPECTFULLY submitted this the 13th day of November, 2007.

/S/Kristie Anderson
Kristie Anderson
Attorney for Plaintiffs
(423) 566-9092
P.O. Box 196
Jacksboro, Tennessee 37757

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing has been filed electronically.

Notice of this filing will be sent by operation of the court's electronic filing system to all parties

indicated on the electronic filing receipt. All other parties will be served by regular U.S. Mail.

Parties may access this filing through the Court's electronic filing system.

Dated this 13th day of November, 2007.

BY: /s/Kristie N. Anderson