# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TENNESSEE
# AT KNOXVILLE

| | |
|---|---|
| LESTER EUGENE SILER, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | No. 3:05-cv-341 |
| ) | Edgar/Guyton |
| GERALD DAVID WEBBER, et al., ) | |
| ) | |
| Defendants. ) | |

## SUPPLEMENTAL AFFIDAVIT OF CHARLES SCOTT

I, Charles Scott, after being duly sworn according to law, depose and state as follows:

1. This affidavit supplements my earlier affidavit submitted to the Court. I submit this supplemental affidavit to address certain representations by Plaintiffs in their response to Defendants' motion, which I first heard about in the news.

2. Jackie Miracle, who supplied an affidavit submitted by Plaintiffs, was hired in March 2003, part-time, as a court bailiff. I am informed he remains so employed. Miracle asked me numerous times to recommend to the Sheriff that he be hired as a patrol officer. Each time, I declined to do so.

3. I recall responding in 2004 to the scene of a pursuit, an incident to which Miracle may be referring in his affidavit speculating about, then mischaracterizing, the arrest of subjects as "abuse" which he claims occurred in my presence. The suspect vehicle in the pursuit had rammed a police cruiser. I arrived at the scene where the pursuit had ended. Deputy Matt Forsyth was on the ground injured and I attended to him. Other Deputies, I believe Nathan Baldwin and Verlin Hatfield, arrested the driver while I attended to Deputy Forsyth. Perhaps I

did not get near the passenger because I am not aware of Jackie Miracle even being at the scene. I deny witnessing any abuse by the Deputies of the suspects, and to my knowledge none was later reported by either the suspects or anyone involved in the criminal charges against the suspects.

4. On occasions when regular patrol deputies are unforeseeably absent from their shift and another patrol deputy to fill in is unavailable, it was necessary to have a deputy from the Corrections Division to work patrol. For example, Josh Monday did this on a number of occasions prior to his transfer from Corrections to the Patrol Division. It would be expected that deputies filling in for patrol officers would prepare necessary warrants for arrests when filling in for absent patrol deputies. Also, deputies would be expected to take warrants against persons who commit offenses in their presence, regardless of their assignment, corrections, patrol, etc., and regardless of whether they worked full or part-time.

5. The individual for whom Plaintiffs submit records concerning a guilty plea in 1992 to burglary and theft charges, Paul Brian Sammons, was not hired as a deputy nor any other paid position with the department. Many years after those charges (and after Sammons demonstrated he had turned his life around), he volunteered his time to assist the department, by installing protective screens, radios, emergency lights and sirens on the department's patrol cars. Sammons did not perform any law enforcement duties whatsoever, nor was he ever a bonded deputy sheriff. On a couple of occasions, he was paid to remove an engine from a totaled (wrecked) cruiser and replace an engine in another cruiser that had a blown engine. This was done as contract labor as other vendors whom performed mechanical services for the department. Sammons was not involved in the investigation or arrest of Lester Eugene Siler.

2

Further, affiant saith not.

_____
Charles Scott

**STATE OF TENNESSEE** )
)
**COUNTY OF** Campbell )

Personally appeared before me, Charles G. Scott, with whom I am personally acquainted, and who acknowledged that he executed the within instrument for the purposes therein contained.

Witnessed my hand, at office, this the 10th day of Apr., 2008.

Monty _____

Commission _____ 11-18-2011

[Notary Seal: State of Tennessee Notary Public, Campbell County]

3